## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY, <br><br>        Plaintiffs, <br><br>     v. <br><br> NEW METHOD WELLNESS, INC., <br><br>        Defendant. | Case No.  19-CV-1301 <br><br> **CONNECTICUT GENERAL LIFE INSURANCE COMPANY AND CIGNA HEALTH AND LIFE INSURANCE COMPANY'S COMPLAINT** |

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") hereby file the following Complaint against Defendant New Method Wellness, Inc. ("New Method") and allege as follows:

### NATURE OF THE ACTION

1.      New Method is a California-based health-care provider that purports to provide medical and mental health services and rehabilitation care for patients suffering from mental health and substance use disorders ("SUDs").  New Method is an out-of-network provider that does not have a contract with Cigna.  This lawsuit arises from New Method's fraudulent billing scheme designed to enrich itself at the expense of Cigna, the plans that Cigna administers and/or insures (the "Cigna Plans" or "Plans"), and Cigna Plan members.

2.      Over the course of several years, New Method has engaged in a scheme to defraud Cigna and the Cigna Plans.  New Method executed this fraudulent scheme by, among other things: (a) knowingly submitting claims for reimbursement to Cigna for services that were not medically necessary and which misrepresented the services that were actually rendered to patients; (b) knowingly submitting claims unsupported by appropriate

documentation of medical records, contrary to the terms of the Cigna Plans and Cigna's billing requirements and guidelines (which are incorporated by reference into the Cigna Plans); and (c) engaging in a fraudulent dual-pricing scheme by knowingly submitting fraudulent and excessively high "charges" to Cigna that did not reflect the amount New Method actually charged its patients or the Cigna Plan members, or that New Method actually incurred for services rendered.

3.      By way of this scheme, New Method defrauded Cigna and the Cigna Plans and was unjustly enriched by at least $1.8 million in overpayments from Cigna and the Cigna Plans. Cigna would have denied New Method's claims had it been aware of New Method's fraudulent scheme and the false and misleading nature of the claims New Method submitted to Cigna.

4.      Cigna seeks to recover the overpayments it made to New Method and to enjoin New Method from continuing to engage in its fraudulent scheme against Cigna and the Cigna Plans.

## THE PARTIES

5.      Connecticut General Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Bloomfield, Connecticut.

6.      Cigna Health and Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Bloomfield, Connecticut.

7.      New Method is a corporation organized under the laws of the State of California, with its principal executive office in San Juan Capistrano, California.

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over New Method pursuant to Conn. Gen. Stat. § 52-59b(a)(2) because New Method committed tortious acts within the state.

9.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Cigna's claims arise under the Constitution, laws, or treaties of the United States.  Specifically, Cigna asserts claims in this case that arise under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA").  This Court has jurisdiction over Cigna's remaining claims pursuant to 28 U.S.C. § 1367 because the state and common law claims alleged herein are so related to the federal claims that they form part of the same case or controversy.

10.     In addition, this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity between Cigna and New Method, and the amount in controversy substantially exceeds $75,000.  Cigna has suffered or will suffer substantially in excess of $75,000 in damages as a result of New Method's actions described herein.

11.     Venue is proper in the District of Connecticut because a substantial part of the events giving rise to the claims in this action occurred in this District.  28 U.S.C. § 1391(b)(2).

12.     Venue is proper in the District of Connecticut because the Cigna Plans at issue are administered in this District.  29 U.S.C. § 1132(e)(2).

## FACTUAL BACKGROUND

### *Cigna's Provider Network and Cigna Plans*

13.     Cigna is a health-services company that, among other things, insures and administers employee health and welfare benefit plans, including the Plans at issue here.  In its

role as a claims administrator fiduciary of those Plans, it is part of Cigna's responsibilities to help maintain the affordability of healthcare coverage for the Plans and the Cigna Plan members.

14.     Cigna is a fiduciary of each of the Plans at issue in this case in its capacity as a claims administrator, as it exercises discretionary authority over Plan assets and Plan administration.

15.     The Cigna Plans at issue here authorize Cigna to recover any overpayments made by the plans on their behalf.

16.     The Cigna Plans at issue here offer Cigna members the choice of receiving services from either in-network or out-of-network providers.

17.     In-network providers are providers with whom Cigna has entered into an agreement pursuant to which Cigna has agreed to reimburse providers at specified rates for services provided to Cigna Plan members.  In turn, the providers agree to provide services to Cigna Plan members, accept reimbursement at agreed-upon rates, and not to bill Cigna Plan members for the difference between the agreed-upon rates and the provider's ordinary billed charges.

18.     Moreover, Cigna Plans generally require members to pay less in "cost-share" obligations (for example, co-payments, co-insurance, and deductibles) when utilizing in-network providers than when utilizing out-of-network providers.  This allows Cigna Plan members to obtain medical services from in-network providers with minimal financial risk or out-of-pocket expense, as compared with out-of-network providers.

19.     Out-of-network providers, like New Method, on the other hand, have not entered into a provider agreement with Cigna.  Cigna has not agreed to pay providers, like New

Method, any predetermined amounts for the services provided to Cigna Plan members. Rather, out-of-network providers charge and bill Cigna and the Cigna Plan members at rates that the providers set independently.

20.     With few exceptions, the amounts that out-of-network providers charge for their services are higher than the contractual rates agreed to between Cigna and in-network providers. Out-of-network providers must then bill Cigna Plan members the balance of charges not covered by Cigna Plans, a practice referred to as "balance billing" Plan members. As a result, a Plan member's financial risk and out-of-pocket expense for obtaining medical services from out-of-network providers is generally greater than the expense for comparable in-network care.

21.     Cigna Plan members are not foreclosed from receiving care from out-of-network providers. However, to sensitize Plan members to the increased cost of care associated with out-of-network providers, Cigna Plan members are required to pay a higher percentage of the charges that out-of-network providers bill for their services.

22.     To that end, Cigna's Plans generally require members to pay a higher cost-share obligation, such as co-payments, co-insurance, and deductibles, for services provided by out-of-network providers. The Plans also provide that the maximum reimbursable amount that the Plans will pay for charges submitted for payment to Cigna for the services billed will be based on either a percentage of the usual and customary amount charged for such services by out-of-network providers in the relevant geographic area, or a multiple of the applicable Medicare rate for such services. The Plans further provide that the Plan members will be responsible for the difference between the amount paid by Cigna and the amount billed by the out-of-network provider. A provider's billed charges are an important and material component of the

maximum reimbursable amount analysis and determination.

23.     These cost-sharing mechanisms are not only critical to Cigna Plans, they also underlie the managed health-care system.  It is widely known that if patients are required to pay for even a small portion of their care out of their own pocket, they will make more informed choices regarding medical care and choose care that is medically necessary, and not simply free of charge.  Indeed, if patients did not share in these costs, they would have no incentive to use lower cost in-network providers.  And, without cost-sharing requirements, out-of-network providers (like New Method) would have no incentive not to charge the Cigna Plans unnecessary, wasteful, and exorbitant rates.

*Cigna's Standards and Guidelines / Medical Necessity Criteria for Treatment of Mental Health and Substance Use Disorders*

24.     The standards and guidelines that govern Cigna's coverage and medical necessity determinations for the treatment of substance use disorders are set forth in a document called "Cigna Standards and Guidelines / Medical Necessity Criteria for Treatment of Mental Health and Substance Use Disorders" ("the Guidelines").  The Guidelines are made publicly available on Cigna's website.  The Guidelines and Cigna's billing standards are incorporated by reference into each of the Cigna Plans.

25.     The Guidelines are derived from, among other sources, clinical practice guidelines of the American Psychiatric Association, the American Association of Pediatrics and the National Institute on Alcohol Abuse and Alcoholism.  In preparing and revising the Guidelines, Cigna also solicits and receives feedback from patients, families, advocacy groups, professional associations, regulatory bodies, psychiatrists, psychologists, and therapists across the country.  The development process of the Guidelines is open and transparent to the public.

26.     The Guidelines define different "Levels of Care" that can be rendered at substance abuse treatment centers and which may be covered by Cigna Plans if appropriate criteria are met.  Among the available covered Levels of Care are:

- **Acute Inpatient Substance Use Detoxification** ("Detox Level of Care");

- **Residential Substance Use Disorders Treatment** ("Residential Level of Care");

- **Partial Hospitalization Substance Use Disorders Treatment** ("PHP"); and

- **Intensive Outpatient Substance Use Disorders Treatment** ("IOP").

27.     Each of these four Levels of Care have different and separate criteria and requirements that must be satisfied and properly documented in order for a provider, such as New Method, to be reimbursed by Cigna Plans for providing that particular Level of Care.

### *Revenue Codes*

28.     Each of these four Levels of Care have different applicable Revenue Codes, which are supplied by the provider, such as New Method, at the time that a claim is submitted for reimbursement.  Revenue Codes inform Cigna what treatment the health-care provider purports to have rendered to the patient.

29.     Detox Level of Care is associated with Revenue Code 126.

30.     Residential Level of Care is associated with Revenue Code 1002.

31.     PHP Level of Care is associated with Revenue Code 912.

32.     IOP Level of Care is associated with Revenue Code 906.

33.     Health-care providers, such as New Method, are required to accurately bill Cigna with the Revenue Code associated with the Level of Care and services that were actually rendered.

*Detox Level of Care*

34.     According to the Guidelines, Detox Level of Care is utilized where there is a need for around-the-clock, intensive psychiatric/medical monitoring of severe withdrawal symptoms.

35.     Requirements associated with the Detox Level of Care include: (1) a thorough evaluation by a psychiatrist or addictionologist is completed within 24 hours of admission; (2) daily monitoring of psychiatric medication effects and side effects, to assure that the patient has a safe and effective withdrawal from alcohol, sedative-hypnotic medications, or opiates; and (3) appropriate medical professionals are available, which include daily visits by a physician and 24-hour monitoring by nursing staff.

*Residential Level of Care*

36.     Residential Level of Care is defined in the Guidelines as either a stand-alone substance use facility or a physically and programmatically-distinct unit within a facility licensed for this specific purpose and includes a 7-day a week, 24-hour supervision and monitoring.

37.     Requirements associated with the Residential Level of Care include: (1) a face-to-face interview of each patient is completed within 72 hours of admission by a psychiatrist or addictionologist; (2) a psychiatrist or addictionologist conducts follow up visits as clinically indicated throughout the duration of the admission, but no less than once weekly; and (3) a nurse is on site 24 hours per day.

38.     Residential Level of Care is transitional in nature only, for the purpose of returning the individual to the community with continued treatment services at less restrictive Levels of Care, as needed.

*PHP*

39.     PHP is an outpatient Level of Care that, according to the Guidelines, provides a coordinated, intense, ambulatory, multi-disciplinary and acute short-term treatment for individuals who can maintain personal safety with support systems in the community.

40.     Requirements associated with the PHP Level of Care include: (1) at a minimum, 20 hours of scheduled programming extended over at least 5 days per week are to be provided; (2) the patient lives in the community without the restrictions of a 24-hour supervised setting during non-program hours, or if the patient is boarding at the facility, during non-program hours, the patient must have the freedom to interact with the community independently, without being accompanied by staff or others; and (3) the patient will have the opportunity to be exposed to circumstances/stressors that may have contributed to his/her admission and to practice his/her coping.

*IOP*

41.     IOP is an outpatient Level of Care that, according to the Guidelines, provides a coordinated, intense, ambulatory, multi-disciplinary and time limited treatment for individuals who can maintain personal safety with support systems in the community and who can maintain some ability to fulfill family, student, or work activities.

42.     Requirements associated with the IOP Level of Care include: (1) a structured treatment program that is typically 3-4 hours per day, 3-5 days per week; (2) the patient lives in the community without the restrictions of a 24-hour supervised setting during non-program hours, or if the patient is boarding at the facility, during non-program hours, the patient must have the freedom to interact with the community independently, without being accompanied by staff or others; and (3) the patient will have the opportunity to be exposed to

circumstances/stressors that may have contributed to his/her admission and to practice his/her coping.

43.     One of the key features of PHP and IOP programs is that they allow patients to practice their recovery skills in an ambulatory setting where they are confronted with the stresses of everyday life.  Freedom to interact with the community unsupervised during non-program hours is essential for patients at PHP and IOP Levels of Care, because the goal is to allow the patient to transition back to a normal life.

### Cigna's Anti-Fraud Unit Investigated New Method's Billing Practices

44.     During the time period relevant to this Complaint, Cigna's anti-fraud unit, the Special Investigation Unit ("SIU"), received information that New Method may be engaging in potentially fraudulent conduct.

45.     In order to obtain further information about these allegations, SIU issued a medical records request to New Method, requesting that New Method provide records related to 24 patients, who were either Cigna members or beneficiaries.

46.     New Method provided the requested patient medical records.  In addition, New Method provided an unsolicited letter from the owner, Susie Hopson Blum, stating that "New Method Wellness does not balance bill our clients, nor do we collect any money from them upon arrival to our facility.  Whatever we collect from insurance is all New Method Wellness receives as payment on our insurance clients."

47.     The statements in Ms. Hopson Blum's letter were an express admission that New Method, as an out-of-network provider, was not "balance billing" members for any portion of billed charges that the Cigna Plans did not reimburse, nor was New Method collecting cost-share obligations from members, as is required by the Cigna Plans.

48.     SIU then engaged Prest & Associates, Inc. ("Prest"), an independent audit/review organization, to conduct a review of the patient records New Method had provided to Cigna.

49.     Prest's review of and report on these records (the "Prest Report") revealed that New Method was engaged in a number of fraudulent billing practices, the purpose of which was to extract more money from Cigna and the Cigna Plans than what New Method was otherwise entitled.  For example:

> (a) New Method misrepresented to Cigna the Level of Care that was being rendered to patients, including billing for PHP and IOP Levels of Care, even when medical records showed consecutive dates of service for weeks at a time and around the clock (24/7) services indicative of a Detox or Residential Level of Care.

> (b) New Method concealed from Cigna the fact that it was conducting medically unnecessary urine drug screens, in order to inflate its revenues.

***New Method Engaged in a Scheme to Misrepresent to Cigna that Patients were Receiving Services at the PHP and IOP Levels of Care When, In Fact, Those Patients were in Residential Level of Care***

50.     The Prest Report identified numerous instances in which New Method billed Cigna for services at the PHP and IOP Levels of Care when, in fact, the patients were receiving treatment at the Detox or Residential Level of Care.

51.     On average, Cigna Plans pre-authorize substance abuse treatment centers to provide only two weeks or less of Residential Level of Care services.  The reason for this is that a longer Residential Level of Care program is generally not medically necessary for most patients, as the severity of their conditions does not require prolonged 24-hour monitoring,

support, and intervention.  Moreover, it is generally more beneficial for patients to transition to lower Levels of Care in order to help them rejoin society by practicing their recovery skills while managing the stresses of their lives.

52.     By contrast, pre-authorization requirements for PHP and IOP Levels of Care are not as restrictive, and oftentimes there are no pre-authorization requirements at all for those Levels of Care.  Thus, Cigna Plans allow for longer periods of patient stays at the PHP and IOP Levels of Care than they do at the Residential Level of Care.  However, even for PHP and IOP Levels of Care, patient stays are not unlimited and are covered only so long at the patient meets the medical necessity criteria for continued care.

53.     New Method knew and exploited these facts for its financial gain.  With respect to some of the patients at issue, New Method billed Cigna and the Cigna Plans for PHP and IOP Levels of Care for periods of up to 52 consecutive days, when in truth and in fact, these patients were receiving Residential Level of Care during those periods of time.  Cigna would not have authorized or reimbursed claims for these lengths of time if New Method had accurately billed for Residential Level of Care.

54.     By engaging in this scheme, New Method knowingly, willfully, and recklessly evaded the preauthorization requirements for Residential Level of Care contained in the Cigna Plans.  In short, New Method succeeded in defrauding Cigna and the Cigna Plans by seeking— and ultimately receiving— reimbursement for longer patient stays than would have otherwise been authorized and paid by Cigna and the Cigna Plans had New Method submitted accurate claims.

55.     Furthermore, the treatment rendered to patients at the PHP and IOP Levels of Care are qualitatively different from Residential Level of Care.  For example, both PHP and

IOP have weekly requirements for structured treatment programs (minimum of 20 hours per week for PHP; between 9 to 20 hours per week for IOP), the goal of which is to allow patients to practice recovery skills in an ambulatory setting where patients are integrated back into the normal stresses of everyday life.  The purpose of Residential Level of Care, in contrast, is to stabilize the patient in a controlled environment, with the purpose of transitioning the patient with continued treatment at less restrictive Levels of Care.

56.     As a result, New Method's misrepresentation that patients were receiving PHP and IOP Levels of Care when, in fact, they were truly in Residential Level of Care, resulted in New Method rendering medically unnecessary services that were not covered under the Cigna Plans.  Cigna would have denied these claims had they known the truth that New Method was billing for services that were not covered under the Cigna Plans.

57.     New Method's fraudulent scheme of misrepresenting the services that were rendered resulted in Cigna and the Cigna Plans being overbilled—and ultimately overpaying—for medically unnecessary services and in New Method being unjustly enriched.

58.     Not only did New Method's scheme defraud Cigna and the Cigna Plans but, more importantly, it harmed the patients.  By holding the patients at Residential Levels of Care for periods of time that were substantially longer than medically necessary, New Method prevented those patients from receiving appropriate treatment and being discharged to programs that offered PHP and IOP Levels of Care.  In doing so, New Method denied those patients the opportunity to progress in their recovery, enabling them to re-integrate safely back into the community.  New Method did so in order to keep the patients at their facility, so they could continue to fraudulently bill Cigna and the Cigna Plans for medically unnecessary services.  In this way, New Method prioritized its financial gain over patient care.

-13-

59.     Furthermore, by misrepresenting that the patients were in PHP and IOP Levels of Care, New Method negatively impacted the ability of those patients to obtain treatment at PHP and IOP Levels of Care following their discharge from New Method.  Based on New Method's fraudulent misrepresentations, at the time of patient discharge, Cigna would have been led to believe that the patients had already completed lengthy programs of PHP and IOP Levels of Care and led to further believe that the patients were in stable condition.  Thus, Cigna would have determined, based on New Method's fraudulent misrepresentations, that the patients did not meet medical necessity for further treatment at the PHP or IOP Levels of Care. By doing so, New Method restricted the patients' ability to obtain actual treatment at the PHP and IOP Levels of Care from other providers.  In that way, New Method forced patients to remain at New Method facilities, thereby improperly increasing its revenues by continuing to fraudulently bill Cigna and the Cigna Plans.

### *New Method Failed to Maintain Proper Documentation of Medical Records*

60.     The Cigna Plans (which, incorporate by reference, the Guidelines) mandate that providers comply with certain minimum documentation requirements in order for claims to be covered.  These requirements serve at least three purposes: (1) they provide evidence and support that the billed services were actually rendered; (2) they ensure that Cigna is being billed only for medically necessary services; and (3) they help protect patients by ensuring that providers prepare timely and accurate medical records, necessary for any future or continuing care.  Failure to follow documentation requirements set forth in the Cigna Plans therefore results in a billed service being not covered.

61.     Some examples of the documentation requirements associated with the four Levels of Care at issue in this case are below.

-14-

a.  Detox Level of Care requires documentation of, among other things: (1) a diagnosis of a moderate to severe substance use disorder; (2) completion of a thorough evaluation by a psychiatrist or addictionologist within 24 hours of the patient's admission; and (3) completion of an individualized treatment plan, completed within 24 hours of the patient's admission.

b.  Residential Level of Care requires documentation of, among other things: (1) a face-to-face evaluation by a licensed behavioral health clinician with appropriate training and experience, within 72 hours prior to the request for admission; (2) a current diagnosis of a moderate to severe substance use disorder; (3) an evaluation by a Board Certified/Board Eligible psychiatrist or addictionologist, within 72 hours of admission; and (4) completion of a preliminary treatment plan within 48 hours of admission and completion of a comprehensive treatment plan within 5 days of admission.

c.  PHP Level of Care requires documentation of, among other things: (1) a face-to-face assessment by a licensed behavioral health clinician with appropriate training and experience, within 72 hours prior to the request for admission; (2) a current diagnosis of a substance use disorder; (3) an evaluation by a Board Certified/Board Eligible psychiatrist or addictionologist, within 48 hours of admission; (4) a medical assessment and physical examination within the first 72 hours of admission; and (5) completion of an individualized treatment plan within 24 hours of admission.

d.   IOP Level of Care requires documentation of, among other things: (1) a face-to-face assessment by a licensed behavioral health clinician with appropriate training and experience, within 72 hours prior to the request for admission; (2) a current diagnosis of a substance use disorder; (3) an evaluation by a Board Certified/Board Eligible psychiatrist or addictionologist, within 48 hours of admission; and (4) completion of an individualized treatment plan within 24 hours of admission.

62.   The Prest Report revealed that New Method consistently failed to comply with the Guidelines' documentation requirements.  For example, there were numerous instances where there was: (1) no documentation that patients had been seen by a Board Certified/Board Eligible psychiatrist or addictionologist; (2) no individualized treatment plans prepared; and (3) no documentation of timely patient evaluation and assessment.

63.   New Method's failure to comply with these documentation requirements reflect that the services billed were not actually performed or were not medically necessary.  These documentation deficiencies rendered New Method's claims not covered under the Cigna Plans.

64.   But by submitting claims to Cigna, New Method represented that it had complied with all of the documentation requirements set forth in the Guidelines and the Cigna Plans.  Cigna relied upon those representations.

65.   Cigna would have denied these claims had they known about New Method's failure to comply with the Guidelines and the Cigna Plans and New Method's billing for undocumented services.

-16-

*New Method Engaged in a Fee-Forgiving Scheme*

66.     "Fee forgiving" occurs when an out-of-network provider does not attempt to collect (or "forgives" the member from having to pay) the required deductible or coinsurance from the member, and/or when the provider fails to balance bill the member for any portion of billed charges that the plan does not reimburse.

67.     The practice of fee forgiving destroys incentives to seek in-network providers and, ultimately, drives up medical costs for plans (which the plans must then pass on to members in the form of higher premiums and/or reduced benefits).  Numerous courts have held fee forgiving to be an illegal practice.  Indeed, some jurisdictions have held such practices to be a criminal violation, with at least two states—Colorado and Florida—having enacted statutes criminalizing fee forgiving schemes.  *See* Colo. Rev. Stat. Ann. § 18-13-119 (West 2011); Fla. Stat. § 817.234(7).

68.      To combat providers from engaging in fee forgiving, Cigna Plans include language that excludes coverage when a health-care provider does not obligate members to pay their required portion of the full amount of charges submitted to Cigna (*i.e.*, the patient's "cost-share" obligation).

69.     Accordingly, for Cigna Plans, if an out-of-network provider does not attempt to collect the required deductible or co-insurance from the member or fails to hold the member responsible for the difference between the insurance allowable and the provider's billed charge, the provider is not entitled to reimbursement by the Cigna Plan.

70.     As part of New Method's fraudulent billing scheme, and as expressly admitted by Ms. Hopson Blum in her letter to Cigna, New Method systematically engaged in fee

forgiving by waiving patients' cost-share obligations and by failing to bill the Cigna Plan members for any portion of billed charges that Cigna Plans did not reimburse.

71.     By not attempting to collect its patients' cost-share obligations and by not attempting to balance bill Cigna Plan members for any portion of billed charges that Cigna Plans did not reimburse, New Method was not entitled to any reimbursement from Cigna under the applicable Plans.

72.     Nevertheless, New Method submitted claims to Cigna for reimbursement that fraudulently misrepresented the amount New Method intended or expected to collect from its patients.

73.     New Method submitted excessively high "charges" to Cigna on its claims for reimbursement, even though New Method had no intention of ever charging its patients or the Cigna Plan members for their share of the cost or through "balance billing."

74.     In this regard, New Method engaged in a "dual-pricing" scheme, by fraudulently billing Cigna excessive "charges" for services that did not reflect the amount that New Method actually charged its patients or the Cigna Plan members or that New Method actually incurred for services rendered.

75.     Cigna and the Cigna Plans relied on these false representations and paid New Method for services that Cigna was not obligated to pay under the applicable Plans.

### *New Method Filed a Lawsuit Against Cigna in California*

76.     On or about April 7, 2017, New Method filed a complaint against Cigna in the Superior Court of California for the County of Orange, Case No. 30-2017-00913478-CU-BC-CJC.  Cigna removed this complaint to the United States District Court for the Central District of California, Case No. SACV 17-00844-AG (DFMx) (the "California Action").

77.     In the California Action, New Method claimed that it had rendered health-care services to thirty-seven patients who were allegedly "members, subscribers and insureds of Cigna," and attempted to step into the shoes of these those patients via an "assignment" of benefits to recover their alleged health benefits from Cigna.  New Method asserted several claims under ERISA and California law.

78.     The California Action was dismissed with prejudice on March 19, 2018, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

79.     Cigna never filed an answer to the complaint in the California Action, nor did it have the opportunity to assert any counterclaims against New Method because the complaint was dismissed at the initial pleading stage.

## <u>COUNT I: FRAUD</u>

80.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

81.     New Method has made numerous false and misleading representations, directly and indirectly, to Cigna, including misrepresenting the services and treatment rendered to patients; misrepresenting that claims being submitted were covered services when, in fact, they were not; knowingly submitting fraudulent and excessively high "charges" to Cigna that did not reflect the amount New Method actually charged its patients or the Cigna Plan members, or that New Method actually incurred for services rendered; and submitting claims that did not comply with requirements for appropriate documentation of medical records as set forth in the Guidelines and the Cigna Plans.

82.     New Method knew that its representations with regards to services, treatment, and documentation were untrue.  New Method knew the services it represented on the its claim

forms were not the services rendered and knew the charges it submitted were false because New Method knew that it was going to waive, discount, or otherwise fail to bill the member for its responsibility for the allowed charge.

83.     Such false and misleading representations were material with respect to Cigna's claims handling, and the decisions to pay New Method's claims (including the amounts paid) and refrain from engaging in additional investigation and/or legal action sooner.

84.     Such false and misleading representations were made by New Method knowingly and intentionally with the intent to mislead and defraud Cigna and the Cigna Plans.

85.     Cigna and the Cigna Plans detrimentally relied upon such false and misleading representations by, among other things, paying New Method at least $1.8 million and refraining from engaging in additional investigation and/or legal action sooner.

86.     Cigna and the Cigna Plans have been damaged by New Method's false representation in that it has paid money that was not owed and has incurred significant expenses and lost productivity as a result of the various investigations and claim processing mandated by such false representations.

**COUNT II: NEGLIGENT MISREPRESENTATION**

87.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

88.     In the alternative, the false and misleading representations made by New Method, directly and indirectly, to Cigna, including but not limited to the misrepresentations described in Paragraph 81 above, were made negligently.

89.     New Method knew or should have known that its representations were untrue.

90.     Cigna and the Cigna Plans reasonably relied upon New Method's misrepresentations.

91.     Cigna and the Cigna Plans detrimentally relied upon such false and misleading representations by, among other things, paying New Method at least $1.8 million and refraining from engaging in additional investigation and/or legal action sooner.

92.     Cigna and the Cigna Plans have been damaged by New Method's false and misleading representations in that it has paid money that was not owed and has incurred significant expenses and lost productivity as a result of the various investigations and claim processing mandated by such false representations.

## COUNT III: UNJUST ENRICHMENT

93.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

94.     New Method submitted, and caused to be submitted, claims for reimbursement to Cigna for services provided to Cigna Plan members that contained false and misleading representations, that included but are not limited to the misrepresentations described in Paragraph 81 above.

95.     The Cigna Plans include a provision that excludes coverage when a healthcare provider does not obligate members to pay their required portion of the full amount of charges submitted to Cigna.  The claims that New Method submitted and caused to be submitted are not covered under the plans because the claims are based on false, misleading, and fraudulent charges submitted to Cigna.  Among other things, New Method's claims are charges are improper because the Cigna Plan member was excused from paying her/his required portion of the full amount of charges submitted to Cigna.

96.     Cigna and the Cigna Plans detrimentally relied upon New Method's false and misleading claims for reimbursement.  New Method's false and misleading representations caused Cigna and the Cigna Plans to pay, and allowed New Method to receive, at least $1.8 million that New Method was not entitled to receive under the Cigna Plans.

97.     New Method has not returned any portion of the money that Cigna and the Cigna Plans paid on claims submitted for these Cigna Plan members.  New Method would be unjustly enriched if it is allowed to retain these payments to which it is not entitled.

## COUNT IV: CONVERSION

98.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

99.     New Method submitted, and caused to be submitted, claims for reimbursement to Cigna for services provided to Cigna Plan members that contained false and misleading representations, that included but are not limited to the misrepresentations described in Paragraph 81 above.

100.    New Method intended to and did obtain funds from Cigna and the Cigna Plans based on these false and misleading representations.

101.    New Method's conduct in making false and misleading representations on its claims for reimbursement to Cigna in order to obtain funds from Cigna and the Cigna Plans was unauthorized.

102.    New Method exercised and continues to exercise ownership over those funds which rightfully belong to Cigna and the Cigna Plans.

103.    New Method exercised and continues to exercise ownership over those funds to the exclusion of Cigna and the Cigna Plans, depriving Cigna and the Cigna Plans of their property.

104.    Cigna and the Cigna Plans have been harmed by New Method's conversion of their funds.

## COUNT V: CIVIL STAUTORY THEFT (CONN. GEN. STAT. § 52-564)

105.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

106.    New Method submitted, and caused to be submitted, claims for reimbursement to Cigna for services provided to Cigna Plan members that contained false and misleading representations, that included but are not limited to the misrepresentations described in Paragraph 81 above.

107.    New Method intended to and did obtain funds from Cigna and the Cigna Plans based on these false and misleading representations.

108.    The funds Cigna paid to New Method as a result of New Method's fraudulent misrepresentations are funds that rightfully belong to Cigna and the Cigna Plans.

109.    New Method obtained those funds with the intent to deprive Cigna and the Cigna Plans of them.

110.    As a result of New Method's conduct, Cigna is entitled to treble damages pursuant to Conn. Gen. Stat. § 52-564.

## COUNT VI: ERISA (29 U.S.C. § 1132(a)(3))

111.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

112.     Under ERISA, a civil action may be brought by a fiduciary to obtain appropriate equitable relief to redress violations of Title I of ERISA or enforce Title I or ERISA.

113.     Title I of ERISA provides that plan assets must be held in trust and used for the "exclusive purpose" of providing benefits to participants and their beneficiaries.

114.     Cigna is a fiduciary of each of the Plans at issue in this case in its capacity as a claims administrator, as it exercises discretionary authority over plan assets and plan administration.

115.     The Cigna Plans at issue here authorize Cigna to recover any overpayments made by the Plans on their behalf.

116.     New Method submitted, and caused to be submitted, claims for reimbursement to Cigna for services provided to Cigna Plan members that contained false and misleading representations, that included but are not limited to the misrepresentations described in Paragraph 81 above.

117.     As a result of those misrepresentations, which Cigna and the Cigna Plans detrimentally relied upon, Cigna and the Cigna Plans overpaid New Method at least $1.8 million in reimbursements.

118.     Upon information and belief, these overpayments were deposited into specified bank accounts that were and are under the control of New Method.

119.     Upon information and belief, some or all of these overpayments remain in these accounts.  To the extent that some portion of the overpayments have been removed from these accounts, those sums were transferred to, and remain in, other bank accounts within the possession, custody, and control of New Method, or they were exchanged for other property

that is also in the possession, custody, or control of New Method.

120.    New Method is not entitled to the plan assets it has received, and its use of such plan assets for its own benefit is a violation of Title I of ERISA, and is remediable under 29 U.S.C. § 1132(a)(3).

121.    Further, New Method is not entitled to the plan assets it has received under the plan terms, which may require retroactive termination of coverage, as a result of its fraud and intentional misrepresentations, and the plan terms are enforceable under 29 U.S.C. § 1132(a)(3).

122.    Cigna is entitled to an injunction enforcing the plan terms, ERISA's trust and exclusive purpose provisions, restitution, the imposition of a constructive trust and recovery for unjust enrichment.

## COUNT VII: DECLARATORY RELIEF

123.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

124.    Under the Declaratory Judgment Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

125.    New Method submitted, and caused to be submitted, claims for reimbursement to Cigna for services allegedly provided to Cigna Plan members that are false and misleading, as described in Paragraph 81 above.

126.    The Cigna Plans include a provision that excludes coverage when a healthcare provider does not obligate members to pay their required portion of the full amount of charges submitted to Cigna.  The claims that New Method submitted and caused to be submitted are

not covered under the plans because the claims are based on false, misleading, and fraudulent charges submitted to Cigna and the Cigna Plans.  Among other things, New Method's claims are charges are improper because the Cigna Plan member was excused from paying her/his required portion of the full amount of charges submitted to Cigna.

127.    An actual controversy exists between New Method and Cigna as to whether New Method is entitled to reimbursement for certain claims submitted to Cigna.

128.    Cigna seeks a declaration that the claims for reimbursement to Cigna are not covered and not payable under the applicable plans.

129.    Cigna also seeks a declaration that New Method must return all sums received from Cigna and the Cigna Plans as a result of New Method's misrepresentations on claims for reimbursement submitted to Cigna.

## JURY DEMAND

### (As to Non-ERISA Claims Only)

130.    The preceding paragraphs are incorporated by reference as if set forth fully herein.

131.    With respect to the Cigna's non-ERISA claims, Cigna hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Cigna prays for relief as follows:

(a)     That Cigna be granted judgment against New Method in the total amount of all damages suffered as a result of New Method's wrongful acts, including pre-judgment and post-judgment interest and treble damages pursuant to § 52-564;

(b)     That New Method be ordered to make restitution for the amount of money it has improperly received, including pre-judgment and post-judgment interest at the statutory rate;

(c)     That New Method be enjoined from instituting any legal or administrative action or complaints for the purpose of recovering any money as a result of services provided by New Method;

(d)     That Cigna be granted a declaration that New Method is not entitled to receive any payment on claims for reimbursement to Cigna;

(e)     That Cigna be granted judgment against New Method for all costs of this action, including its reasonable attorneys' fees and costs; and

(f)     That this Court grant Cigna such other and further relief as it considers just and equitable under the circumstances.

DATED:  August 21, 2019                    Respectfully submitted by,

                                           **ALSTON & BIRD LLP**

                                           */s/ Edward T. Kang*
                                           EDWARD T. KANG
                                           EMILY COSTIN (*pro hac vice* motion
                                           forthcoming)
                                           950 F Street, NW
                                           Washington, DC  20004
                                           Telephone:  202-239-3300
                                           Facsimile:  202-239-3333
                                           E-mail:  edward.kang@alston.com
                                           E-mail:  emily.costin@alston.com

                                           KELSEY L. KINGSBERY (*pro hac vice*
                                           motion forthcoming)
                                           555 Fayetteville Street, Suite 600
                                           Raleigh, North Carolina 27615
                                           Telephone: 919-862-2200
                                           Facsimile: 919-862-2260
                                           E-mail: kelsey.kingsbery@alston.com

                                           *Attorneys for Plaintiffs Connecticut General Life*
                                           *Insurance Company and Cigna Health and Life*
                                           *Insurance Company*